## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

LISA PEATRY, individually, and on behalf of all others similarly situated,

        Plaintiff,

  v.

BIMBO BAKERIES USA, INC.,

        Defendant.

Case No. 1:19-cv-02942

Honorable Sara L. Ellis

## DEFENDANT BIMBO BAKERIES USA, INC.'S
## OPPOSITION TO PLAINTIFF'S MOTION TO REMAND TO STATE COURT

Plaintiff's Motion to Remand ("Motion") ignores both the law and the facts in this BIPA case in order to circumvent this Court's proper jurisdiction. Plaintiff asserts that Bimbo Bakeries USA, Inc. ("Bimbo") engaged in "jurisdictional machinations," "misrepresent[ed] the allegations of Plaintiff's Complaint, wildly and falsely inflating Plaintiff's and putative class members' potential damages," and made "outlandish claims [that] defy both reality and the actual allegations of Plaintiff's Complaint" for damages related to Bimbo's alleged violations of Illinois' Biometric Information Privacy Act ("BIPA"). (Mot. 1–3.) Bimbo does no such thing. The Complaint's allegations demonstrate this case belongs in federal court.

First, Plaintiff's non-binding statements to remain below the jurisdictional amount in controversy are wholly impermissible. Plaintiff asserts in her Motion that she is seeking only "$5,000 maximum damages" per violation, (*see id.* at 4 n.1), and a maximum of three violations, which she claims will cap damages at $15,000—for not only herself but also for each putative class members. (*Id.* at 4.) But this is not what her Complaint alleges and her non-binding statements in a brief are entirely irrelevant to any remand analysis. *See Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 771–72 (7th Cir. 2014) (observing that limiting damages under

Illinois law requires a "binding stipulation or affidavit with the complaint" and that even with such a stipulation, a named plaintiff cannot "limit the amount of potential damages that the class would be able to recover" prior to class certification). For this reason alone, Plaintiff's Motion should be denied, and the Court could properly end its analysis here.[1]

Second, while Plaintiff represents to this Court that each class member could be awarded only $15,000 at most, she ignores the potential for any "actual damages" provided under BIPA, attorney's fees at the time of removal, and her Complaint's other prayers for relief, including "[a]warding injunctive and other equitable relief" to require Bimbo's compliance with BIPA[2] and "[a]warding such other and further relief as equity and justice may require." (Compl. ¶ 21.) Plaintiff cannot demonstrate that is "legally impossible" that the amount in controversy between the parties exceed $75,000 as to the Plaintiff and $5,000,000 as to the putative class. This matter is properly before the Court.

## ARGUMENT

When considering the jurisdictional amount in controversy—the *only* element of Bimbo's removal petition that Plaintiff challenges—"[t]he question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). "That the plaintiff may fail in its proof, and the

---

[1] Bimbo encourages Plaintiff to amend her Complaint to cap her possible recovery at a maximum of $15,000, which is what she is now representing to this Court. This does not change the fact that removal was proper and that this matter should remain in federal court, as such post-removal stipulations or disclaimers to stay below the jurisdictional amount in controversy do not permit remand. *Hunt v. DaVita, Inc.*, 680 F.3d 775, 777–78 (7th Cir. 2012) ("[P]ost-removal disclaimer of damages exceeding $75,000 could not defeat federal jurisdiction after a proper removal based on the complaint.") (collecting cases).

[2] Bimbo denies that it has violated BIPA and denies any allegations that it is not in compliance with BIPA's requirements.

judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will be zero) does not prevent removal." *Id.*

Bimbo, as the proponent of jurisdiction, has the burden of showing, by a preponderance of the evidence, "facts that suggest the amount-in-controversy requirement is met." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). "That is easier said than done when the plaintiff, the master of the complaint, does not want to be in federal court and provides little information about the value of her claims." *Id.* "In such a case, a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Id.* "Once the defendant in a removal case has established the requisite amount in controversy, the plaintiff can defeat jurisdiction ***only*** if 'it appears to *a **legal certainty*** that the claim is really for less than the jurisdictional amount.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)) (emphasis added). In other words, "[o]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed [the jurisdictional threshold], then the case belongs in federal court unless it is ***legally impossible*** for the plaintiff to recover that much." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (emphasis added).

While Plaintiff is correct that "[t]he party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court," Mot. 2 (citing *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009)), she omits that the *Schur* court only dealt with removal on traditional complete diversity grounds. In contrast, there notably is "no presumption against removal in cases that are removed under CAFA," as is the case here. *Dixon v. Wash. & Jane Smith Cmty.*, No. 17 C 8033, 2018 U.S. Dist. LEXIS 90344, at *19-20 (N.D. Ill. May 31, 2018) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) and

*Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 n.22 (7th Cir. 2017)). Regardless, under both complete diversity and CAFA, Plaintiff fails to meet her burden to show it is legally impossible for Plaintiff and the class to recover amounts sufficient to meet the amount in controversy standard.

I. **PLAINTIFF'S POST-REMOVAL DISCLAIMER OF DAMAGES IS IMPERMISSIBLE**

Plaintiff's attempt to now—after proper removal—disclaim any damages in excess of the jurisdictional thresholds is impermissible, and her Motion should be denied. Both the Supreme Court and the Seventh Circuit have already dealt with this issue and their guidance requires this result. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013); *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769 (7th Cir. 2014).

In *Pushpin Holdings*, the Seventh Circuit was presented with a class action complaint that specifically alleged that the class sought "no more than $1,100,000.00 in compensatory damages and $2,000,000.00 in punitive damages, and will incur attorneys' fees of no more than $400,000.00 in prosecuting the class action counts, and therefore the total amount of compensatory damages plus punitive damages plus attorney's fees requested on behalf of all class members is no more than $3,500,000.00," below the $5 million threshold for removal under CAFA. 748 F.3d at 771 (internal quotations omitted). The district court granted the plaintiff's Motion and remanded back to state court, but the Seventh Circuit reversed. *Id.* at 771, 773.

In reaching its conclusion, the Seventh Circuit acknowledged that "[a] court can't force a plaintiff to accept greater damages than he wants; and [that] it might seem that class counsel in this case had made a commitment, in the . . . complaint, not to seek a judgment for more than $3.5 million." *Id.* at 772. However, "Illinois statutory and case law . . . [contain] statements that a plaintiff's damages ***are not limited*** to the amount sought in the complaint." *Id.* (emphasis added).

Accordingly, the Court in *Pushpin Holdings* concluded that "an unattested statement in a complaint won't do" to bring the possible damages below the jurisdictional threshold. *Id.* ³

In the matter now before the court, Plaintiff has not alleged in her Complaint that she seeks only a maximum of $15,000 in damages on her own behalf and on behalf of each putative class member. On the contrary, the Complaint is quite clear that it is seeking damages "for *each* willful and/or reckless violation of BIPA" or, alternatively, "for *each* negligent violation of BIPA," for injunctive relief, and "such other and further relief as equity and justice may require." (Compl. ¶¶ 69, 86, and 95); (*id.* at 21 (emphasis in the original)).

Plaintiff's Complaint is replete with allegations of a "clock in or clock out" damages theory (i.e., that a violation could occur with each scan of a finger), repeatedly mentioning the "scanning" of "fingerprints" and referencing "for each violation." These allegations do not make clear that Plaintiff is seeking a maximum of one violation per count (for a $15,000 maximum). On the contrary, they intentionally leave open the possibility of multiple violations. (*See* Compl. ¶ 31 ("Per the company's policy, all of Defendant's hourly employees are required to use their fingerprints to clock-in and clock-out for attendance."); ¶ 43 ("Plaintiff was required to scan her fingerprint *each time she clocked in for work and clocked out of work*") (emphasis added); ¶ 74 ("Plaintiff has *continuously* and *repeatedly* been exposed to the risks and harmful conditions created by Defendant's *multiple violations* of BIPA alleged herein.) (emphasis added); ¶ 49 ("Plaintiff has been aggrieved because she suffered an injury-in-fact based on Defendant's

---

³ Even if Peatry submitted an "attested statement," which she did not, it would not bind any potential class member. *See Pushpin Holdings*, 748 F.3d at 772 ("[A] stipulation by the named plaintiff in his complaint— even though accompanied by an affidavit signed by him—if made before the class is certified doesn't limit the amount of potential damages that the class would be able to recover and so does not affect removability under the Class Action Fairness Act.") (citing *Knowles*, 133 S. Ct. at 1349).

*violations* of her legal rights.") (emphasis added).)[4]  Plaintiff clearly articulated more than one claimed violation per Count in her Complaint and only now—in an unverified, non-binding Motion—disclaims otherwise to circumvent this Court's jurisdiction.[5]

Because Plaintiff's non-binding statement in her Motion has no legal effect, and, alternatively (because she is unable to bind the class prior to class certification), her Motion for remand is without merit and should be denied. *See Pushpin Holdings*, 748 F.3d at 772 (citing *Knowles*, 133 S. Ct. at 1349).

## II. THE AMOUNT IN CONTROVERSY EXCEEDS THE JURISDICTIONAL BAR EVEN IF PLAINTIFF'S DAMAGES DISCLAIMER WERE EFFECTIVE, WHICH IT IS NOT.

A second and entirely independent basis exists to deny Plaintiff's Motion.  Even if Plaintiff's Complaint did properly disavow multiple violations of BIPA (it did not) and could bind the putative class to such a limitation (it cannot), the amount in controversy still exceeds the jurisdictional threshold.

Again, when considering the jurisdictional amount in controversy, the inquiry "is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties." *Brill*,

---

[4] Bimbo is not the only BIPA defendant to believe a plaintiff represented by Plaintiff's counsel, Stephan Zouras LLP, is advancing a theory of a violation claim for each clock in and clock out based upon a nearly identical complaint. *See, e.g.,* Notice of Removal, *Stidwell v. Kronos*, No. 1:19-cv-00770, at ¶ 21 (N.D. Ill. Feb. 6, 2019) (ECF No. 1) ("In addition, the amount in controversy exceeds $75,000 because Plaintiff seeks a statutory penalty for 'each violation' of up to $5,000, and because Plaintiff alleges that each time he clocked into and out of work using his 'fingerprint' over his alleged 23-month period of employment constituted an independent violation."), attached as **Exhibit A**.

[5] Bimbo in no way endorses a "clock in and clock out" or "per scan" theory of liability, which is articulated on the face of Plaintiff's Complaint (but now disavowed in Plaintiff's Motion).  Bimbo does not believe that Plaintiff would or should prevail on such a damages theory.  Unfortunately, however, until Plaintiff amends her Complaint to bind herself (something she does not offer to do in her Motion), it is still entirely legally possible that Plaintiff will pursue such a theory of liability (and Plaintiff cites no legal authority to the contrary prohibiting a "per scan" theory of liability under BIPA).  Again, Bimbo encourages Plaintiff to amend her Complaint to conform to the $15,000 damages maximum she now represents to the Court, although that will not change the remand analysis explained above.

427 F.3d at 448. "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed [the jurisdictional amount], then the case belongs in federal court unless it is *legally impossible* for the plaintiff to recover that much." *Spivey*, 528 F.3d at 986 (7th Cir. 2008) (emphasis added). "[A] good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Oshana*, 472 F.3d at 511

In now representing to the Court that Plaintiff will not seek any more than $15,000 damages maximum, Plaintiff describes only alleged liquidated damages (Mot. 4), but ignores all other requested relief in her Complaint. The Complaint requests an Order including "[a]warding injunctive and other equitable relief" to require Bimbo's compliance with BIPA and "[a]warding such other and further relief as equity and justice may require." (Compl. ¶ 21.) As Plaintiff acknowledges in Paragraph 19 of the Complaint, pursuant to section 20 of BIPA, a "prevailing party" may recover for each violation:

> (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 *or actual damages*, whichever is greater;
>
> (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 *or actual damages*, whichever is greater;
>
> (3) *reasonable attorneys' fees and costs*, including expert witness fees and other litigation expenses; and
>
> (4) other relief, including an *injunction*, as the State of federal court may deem appropriate.

740 ILCS 14/20 (emphasis added).

Under BIPA, Plaintiff can recover *either* liquidated damages or actual damages – whichever is greater. Although Bimbo denies her allegations, Plaintiff specifically claims that she was actually injured as a result of Bimbo's alleged conduct. For example, Plaintiff alleges in her Complaint that Bimbo unlawfully disseminated her private biometric information. (Compl. ¶¶ 32, 38, 49, 52, 54, 61.) She characterizes this alleged dissemination—in both her Complaint and in

her Motion—as having "suffered an invasion of a legally protected interest when Defendant secured her personal and private biometric data at a time when they [sic] had no right to do so, *a gross invasion of her right to privacy*." (Compl. ¶ 49 (emphasis added)); (*see also* Mot. 1 ("Bimbo invaded her privacy.").) According to the Complaint, "Plaintiff's biometric information is economically valuable, and such value will increase as the commercialization of biometrics continues to grow," and "[b]iometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse." (Compl. ¶ 25, 50.) It is not "impossible"—particularly in today's climate of heightened privacy concerns—that actual damages in this matter would exceed $75,000.[6]

Additional amounts even beyond the potential for actual damages must be considered as well. Attorney's fees incurred up to time of removal should also be included in the amount in controversy calculation. *ABM Sec. Servs. v. Davis*, 646 F.3d 475, 479 (7th Cir. 2011). The value of Plaintiff's injunctive relief may also be taken into account. *Home Depot, Inc. v. Rickher*, No. 06-8006, 2006 U.S. App. LEXIS 32391, at *3 (7th Cir. May 22, 2006) ("The amount in controversy includes monetary damages, attorney's fees and "the cost a defendant incurs in complying with injunctive relief.") (citing *Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004)). Attorney's fees to date, which would include plaintiff's counsel's fees to

---

[6] While we are not aware of any BIPA third-party disclosure judgments, looking at other invasion of privacy cases (as Plaintiff describes Bimbo's alleged actions as "a gross violation of her privacy rights"), actual damages awarded at trial vary but have reached many tens of thousands of dollars. *See, e.g.*, *Sanders v. Am. Broad. Cos.*, 978 P.2d 67, 70 (Cal. App. 1999) (remanding for further proceeding in a case where "[a]t the conclusion of the second phase of trial, the jury found defendants liable on the cause of action for *invasion of privacy by intrusion*. In subsequent trial phases, the jury fixed compensatory damages at $335,000.") (emphasis added).

conduct a thorough and reasonable investigation of the matter and drafting of the class action complaint, plausibly could be tens of thousands of dollars.[7]

Taking all this together, it is not "legally impossible" that the amount in controversy between the parties exceeds the jurisdictional threshold. The same holds true for the putative class. In order to cross the $5,000,000 threshold, each class member would only need to have the legal possibility of recovering only $17,000 (300 class members x $17,000 = $5,100,000), which is not "impossible" considering the allegations of "a gross invasion of [their] right to privacy." (Compl. ¶ 49.) Accordingly, Plaintiff's Motion should be denied.

### III. PLAINTIFF IS NOT ENTITLED TO FEES AND COSTS

Even if the Court finds that remand is proper, Plaintiff should not recover fees and costs. Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Absent unusual circumstances, the Court may award attorney's fees pursuant to Section 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *see also Lott v. Pfizer, Inc.*, 492 F.3d 789, 794 (7th Cir. 2007) ("Because Pfizer had an objectively reasonable basis for seeking removal, the district court erred by awarding the plaintiffs their attorneys' fees under § 1447(c)."). "As a general rule, if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees." *Id.* "By contrast, if clearly established law did not foreclose a defendant's basis

---

[7] *See Kurgan v. Chiro One Wellness Ctrs.*, LLC, No. 10-cv-1899, 2015 U.S. Dist. LEXIS 52006, at *9 (N.D. Ill. Apr. 21, 2015) ("Stephan Zouras requests $500/hr for partners, $250-$300/hr for associates, and $125/hr for paralegals."); *see also* Plaintiff's Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement, *Dixon v. Washington & Jane Smith Home*, No. 1:17-cv-08033, at 30–31 (May 9, 2019 N.D. Ill.) (ECF No. 79) (Stephan Zouras LLP seeking $551,500 as fee award in class action BIPA settlement), an excerpt of which is attached as **Exhibit B**.

for removal, then a district court should not award attorneys' fees." *Id.* Whether to award costs and fees "rests within the district court's discretion." *Fincher v. S. Bend Hous. Auth.*, 578 F.3d 567, 569 (7th Cir. 2009).

None of the conditions supporting an award of fees or costs are present in the current matter. Bimbo had an objectively reasonable basis for removal. The only element challenged by Plaintiff is the amount in controversy, and, for the reasons articulated above, Plaintiff's Complaint plausibly articulates amounts in controversy in excess of the jurisdictional thresholds.

\*     \*     \*

For the reasons stated above, Bimbo Bakeries USA, Inc. respectfully asks this Court to deny Plaintiff's Motion to remand this matter to state court and to award Bimbo Bakeries USA, Inc. such other and further relief as justice may require.

Dated: May 30, 2019

Respectfully submitted,

**BIMBO BAKERIES USA, INC.**

By: /s/ Elizabeth B. Herrington
    Elizabeth B. Herrington
    Alex D. Berger
    Tyler Z. Zmick
    MORGAN, LEWIS & BOCKIUS LLP
    77 West Wacker Dr.
    Chicago, IL 60601-5094
    Tel. 312.324.1445
    Fax 312.324.1001
    Beth.Herrington@morganlewis.com
    Alex.Berger@morganlewis.com
    Tyler.Zmick@morganlewis.com

## **CERTIFICATE OF SERVICE**

I, Elizabeth B. Herrington, hereby certify that on this 30th day of May, 2019, I caused a copy of the foregoing DEFENDANT BIMBO BAKERIES USA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND TO STATE COURT to be served upon all counsel of record via the Court's CM/ECF system.

/s/ Elizabeth B. Herrington
Elizabeth B. Herrington