# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LISA PEATRY, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 19 C 2942 |
| v. | ) ) | Judge Sara L. Ellis |
| BIMBO BAKERIES USA, INC., | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Lisa Peatry, an employee of Defendant Bimbo Bakeries USA, Inc. ("Bimbo"), filed this putative class action lawsuit alleging that Bimbo violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/1 *et seq.*, through its collection, storage, and use of Peatry's biometric information. Specifically, Peatry brings claims for (1) Bimbo's failure to institute, maintain, and adhere to a publicly available retention schedule in violation of BIPA § 15(a); (2) Bimbo's failure to obtain informed, written consent before obtaining biometric information in violation of BIPA § 15(b); and (3) Bimbo's disclosure of biometric information before obtaining consent in violation of BIPA § 15(d). Bimbo moves to dismiss the complaint, arguing that § 301 of the Labor Management Relations Act of 1947 (the "LMRA") and the National Labor Relations Act of 1935 (the "NLRA") preempt Peatry's claims.[1] Alternatively, Bimbo argues that Peatry has failed to state a BIPA claim and that the Illinois Workers Compensation Act (the "IWCA"), 820 Ill. Comp. Stat. 305/1 *et seq.*, bars her

---

[1] Bimbo filed its motion under Federal Rule of Civil Procedure 12(b)(3) for improper venue. Subsequently, the Seventh Circuit clarified that the Court should consider these preemption arguments under Rule 12(b)(1) for lack of subject matter jurisdiction or as a motion for judgment on the pleadings under Rule 12(c). *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 901 (7th Cir. 2019). Because Bimbo has not yet filed an answer, the Court considers Bimbo's preemption arguments under Rule 12(b)(1).

claims. The Court finds that § 301 of the LMRA preempts Peatry's claims arising after May 8, 2018, when a collective bargaining agreement governing Peatry's employment went into effect. But Peatry may proceed on her pre-May 8, 2018 claims, which neither the NLRA or IWCA preempt and sufficiently allege BIPA violations.

## BACKGROUND[2]

Bimbo, a bakery product manufacturing company, uses a biometric timekeeping device, provided by a third party, to track employees' hours. Upon hiring an employee, Bimbo scans their fingerprints and enrolls them in an employee database. Employees must then use their fingerprints to clock in and clock out. Bimbo does not inform its employees that it discloses the biometric information it collects to its third-party vendor and other third parties that host the database. Bimbo also does not obtain written releases before collecting the fingerprints or provide employees with a written, publicly available policy identifying a retention schedule and guidelines for permanently destroying employees' fingerprints.

Peatry worked for Bimbo as a machine operator at Bimbo's facility at 1540 S. 54th Avenue in Cicero, Illinois. Aryzta owned this facility until Bimbo acquired it on February 9, 2018. Bimbo entered into a collective bargaining agreement ("CBA") with the Chemical and Production Workers Union Local No. 30, AFL-CIO (the "Union"), which became effective May 8, 2018. Among other things, the CBA provides Bimbo with certain exclusive management rights, including "to make and enforce reasonable plant rules of conduct and regulations not inconsistent with the provisions" of the CBA, "to introduce new and improved methods, materials, equipment or facilities," and "to change or eliminate existing methods, materials,

---

[2] The facts in the background section are taken from Peatry's complaint and are presumed true for the purpose of resolving the motion to dismiss pursuant to Rule 12(b)(6). *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). The Court also considers the additional materials submitted by Bimbo when considering the motion to dismiss pursuant to Rule 12(b)(1). *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

equipment, or facilities." Doc. 18-1 at 8. The CBA also sets forth negotiated wage tables. Finally, as relevant here, the CBA includes a grievance procedure, requiring employees to pursue "dispute[s] regarding the meaning and application of the terms of" the CBA in accordance with that procedure. *Id.* at 12.

During her employment at the facility between September 2016 and February 2019, Peatry scanned her fingerprints every time she clocked in and out of work as part of the facility's timekeeping method.[3] Bimbo never informed her of the purposes or length of time for which Bimbo collected, stored, used, and disseminated her biometric data. Bimbo also never informed her of a biometric data retention policy or whether Bimbo would at some point permanently delete her biometric data. Peatry never received or signed a written release authorizing the collection, storage, use, and dissemination of her biometric data. She would not have provided her biometric data if she knew that Bimbo would retain it for an indefinite period of time without her consent. She also would not have agreed to the compensation she received had she known that Bimbo would retain her biometric data indefinitely.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *Apex Digital*, 572 F.3d at 443–44. If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded

---

[3] Peatry's complaint alleges that her employment ended in February 2019, while Bimbo's representative indicates that his review of the records reflects an end date of March 12, 2019. The end date of her employment does not affect the pending motion to dismiss.

3

factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See id.*; *United Phosphorus*, 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *See Apex Digital*, 572 F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.     Section 301 Preemption

First, Bimbo argues that § 301 of the LMRA preempts Peatry's claims arising after May 8, 2018, when the CBA between Bimbo and the Union went into effect. Section 301 preempts "claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3

(1987)). "If the resolution of a state law claim depends on the meaning of, or requires interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996); *see also Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 797 (7th Cir. 2013) (section 301 preemption "covers not only obvious disputes over labor contracts, but also any claim masquerading as a state-law claim that nevertheless is deemed 'really' to be a claim under a labor contract").

Bimbo argues that Peatry's BIPA claims arising after May 8, 2018 require the Court to interpret the CBA's management rights provision, which gives Bimbo the right "to make and enforce reasonable plant rules of conduct and regulations," as well as "to introduce new and improved methods, materials, equipment or facilities, or to change or eliminate existing methods, materials, equipment or facilities." Doc. 18-1 at 8. Bimbo claims that determining whether the CBA authorized Bimbo to use the timekeeping system at issue requires consideration of the scope of these management rights. *See Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1179 (7th Cir. 1993) (privacy violation suit arose under § 301 because "the company has a nonfrivolous argument that the surveillance of which the plaintiffs complain is authorized, albeit implicitly, by the management-rights clause of the agreement, so that the plaintiffs' claim that the surveillance invaded their privacy cannot be resolved without an interpretation of the agreement"). Bimbo also argues that Peatry's allegations that Bimbo did not sufficiently compensate her for the retention and use of her biometric data implicates the CBA's wages provision because the Court would have to consider whether the wage provision in the CBA intended to compensate Peatry for the use of the timekeeping system. Because Peatry did not

submit any grievance or request for arbitration, Bimbo contends that Peatry failed to comply with § 301's procedural requirements and so the Court must dismiss those claims.

In *Miller v. Southwest Airlines Co.*, the Seventh Circuit recently considered a similar preemption argument under the Railway Labor Act ("RLA"), 45 U.S.C. § 181 *et seq.* 926 F.3d 898. In both of the cases consolidated before the Seventh Circuit, the plaintiffs alleged that the defendants implemented biometric timekeeping systems without the plaintiffs' consent, did not publish protocols as required by BIPA, and improperly disclosed the plaintiffs' biometric information. *Id.* at 901. The defendants argued that the plaintiffs had consented to the use of their biometric identifiers through the applicable collective bargaining agreements' management rights clauses. *Id.* The Seventh Circuit rejected the plaintiffs' argument that their union could not qualify as an "authorized agent" that could provide consent and receive notices for BIPA purposes, noting that "[n]either the statutory text nor any decision by a state court suggests that Illinois wants to exclude a collective-bargaining representative from the category of authorized agents." *Id.* at 903; *see* 740 Ill. Comp. Stat. 14/15(b), (d) (requiring entities collecting biometrics to provide notice to and receive release from "the subject or the subject's legally authorized representative"). Therefore, *Miller* found that the RLA preempted the plaintiffs' claims, which involved "retention and destruction schedules for biometric data, and whether [the defendants] may use third parties to implement timekeeping and identification systems," as well as whether the management rights clauses granted authority to the unions to consent to the collection and use of biometric data. 926 F.3d at 903. *Miller* governs the Court's resolution of the preemption question raised here because the RLA preemption standard is "virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the LMRA." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994). The facts are also almost identical here.

Therefore, under *Miller*, Peatry's claims require interpretation of the CBA so that § 301 preempts her post-May 8, 2018 claims. 926 F.3d at 903–04 (because dispute about collection and use of biometric information required interpretation of CBA's management rights and wage provisions, the "state law is preempted to the extent that a state has tried to overrule the union's choices on behalf of the workers").

Peatry ignores the Seventh Circuit's *Miller* decision, despite the fact that the Seventh Circuit issued *Miller* before Peatry filed her response. Instead, Peatry only addresses the underlying district court decisions that the Seventh Circuit considered in *Miller*, attempting to distinguish her claims from the facts there. Peatry contends that the plaintiffs in those cases challenged the defendants' "decision to implement and use a biometric timekeeping device" and sought actual damages, while her claims involve statutory violations "stemming from [Bimbo's] failure to obtain consent prior to [its] collection, obtainment, use, storage and dissemination of [Peatry's] biometrics, as well as its failure to provide public retention and destruction guidelines." Doc. 34 at 5–7. But, having compared Peatry's complaint to the complaints in those cases, the Court observes no material differences where the plaintiffs in those cases alleged the same statutory violations and only requested statutory damages as compensation for the BIPA violations. *See Miller v. Sw. Airlines Co.*, No. 18 C 86, Doc. 22 ¶¶ 72–81, Prayer for Relief (N.D. Ill. April 2, 2018); *Johnson v. United Airlines, Inc.*, No. 17 C 8858, Doc. 1-1 ¶¶ 46–55, Prayer for Relief (N.D. Ill. Dec. 8, 2017).

In another attempt to avoid *Miller*, Peatry argues that BIPA provides her with non-waivable rights that § 301 cannot preempt. *Miller* rejected Peatry's contention that only she, and not the Union, could consent to Bimbo's use of her biometric information. 926 F.3d at 903. As in *Miller*, the Union was Peatry's "sole and exclusive bargaining agent with respect to rates of

pay, hours of work and other conditions of employment."  Doc. 18-1 at 8; *see* 29 U.S.C.

§§ 158(a)(5), 158(d), 159(a).  And instead of excluding a union from acting on its members'

behalf with respect to their privacy rights under BIPA, BIPA explicitly allows "an authorized

agent" to receive notices and consent to the collection of biometric information.  740 Ill. Comp.

Stat. 14/15(b), (d); *Miller*, 926 F.3d at 903–04 ("That biometric information concerns workers'

privacy does not distinguish it from many other subjects, such as drug testing, that are routinely

covered by collective bargaining and on which unions give consent on behalf of the whole

bargaining unit.").

More importantly, however, Peatry ignores that § 301 may even preempt a nonnegotiable

state remedy that "turns on the interpretation of a collective bargaining agreement."  *Atchley*, 101

F.3d at 501; *Carter v. Tyson Foods, Inc.*, No. 3:08-CV-209, 2009 WL 4790761, at *8 (N.D. Ind.

Dec. 3, 2009) ("[E]ven non-negotiable statutory rights may be preempted if interpretation of a

collective bargaining agreement was required to resolve the statutory claims." (citing *Lingle v.*

*Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 n.7 (1988))).  Here, Peatry's BIPA claims

require interpretation of the CBA, meaning that § 301 preempts her BIPA claims regardless of

whether the Court treats her rights under BIPA as nonnegotiable.  *See Atchley*, 101 F.3d at 501.

And although the LMRA does not provide a separate vehicle for asserting claims like the RLA,

the CBA includes a grievance procedure through which Peatry arguably could have raised her

claims.

Because § 301 preempts Peatry's post-May 8, 2018 claims, the Court must determine the

appropriate remedy.  The Supreme Court has indicated that a preempted state law claim "must

either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law."

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).  Employees must exhaust

administrative remedies before bringing suit in federal court unless certain exceptions apply. *See McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 616 (7th Cir. 2001). Peatry has not set forth allegations to allow the Court to treat her claims as § 301 claims, and it appears she did not properly exhaust her administrative remedies. Although Peatry may have an argument concerning the futility of exhaustion or the unavailability of the grievance procedure, the Court cannot make such determinations on the information before it. The Court therefore finds it appropriate to dismiss Peatry's post-May 8, 2018 claims without prejudice and allow Peatry to evaluate how she wishes to proceed with respect to these preempted claims.

## II.    NLRA Preemption

Bimbo also argues that the NLRA preempts Peatry's remaining pre-May 8, 2018 claims. The Supreme Court has developed two NLRA preemption doctrines, known as *Garmon* preemption and *Machinists* preemption. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959); *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wis. Emp't Relations Comm'n*, 427 U.S. 132 (1976). *Garmon* preemption "seeks to prevent conflicts between state and local regulation and Congress's integrated scheme of regulation embodied in Section 7 and 8 of the NLRA" and ensures "the NLRB's primary jurisdiction in cases involving" those NLRA sections. *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1125 (7th Cir. 2008). *Machinists* preemption "forbids both the National Labor Relations Board (NLRB) and States to regulate conduct that Congress intended 'be unregulated [and] left to be controlled by the free play of economic forces.'" *Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 65 (2008) (quoting *Machinists*, 427 U.S. at 140); *Cannon v. Edgar*, 33 F.3d 880, 885 (7th Cir. 1994) ("*Machinists* preemption prohibits state and municipal regulations of areas that Congress left to the free play of economic forces.").

As the *Miller* court recognized, and contrary to Peatry's position, "how workers clock in and out is a proper subject of negotiation between unions and employers—is, indeed, a mandatory subject of bargaining." *Miller*, 926 F.3d at 903; *see* 29 U.S.C. § 158(d). "Similarly, the retention and destruction schedules for biometric data, and whether [employers] may use third parties to implement timekeeping and identification systems, are topics for bargaining between unions and management." *Id.* But this does not automatically mean that the NLRA preempts Peatry's claims. *520 S. Mich. Ave.*, 549 F.3d at 1128 ("[A] state law is not preempted by the NLRA merely because it regulates a mandatory subject of bargaining."); *Spoerle v. Kraft Foods Glob., Inc.*, 527 F. Supp. 2d 860, 870–71 (W.D. Wis. 2007) (rejecting argument that "if Congress requires employers to engage in collective bargaining on a particular matter, states are powerless to impose any requirements that touch on any aspect of that matter").

"[T]he NLRA is concerned primarily with establishing an equitable process for bargaining, and not the substantive terms of bargaining." *520 S. Mich. Ave.*, 549 F.3d at 1128. Its preemptive reach does not extend to a state law that "establishes a minimum labor standard that does not intrude upon the collective-bargaining process." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7 (1987); *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 754–55 (1985) ("No incompatibility exists, therefore, between federal rules designed to restore the equality of bargaining power, and state or federal legislation that imposes minimal substantive requirements on contract terms negotiated between parties to labor agreements, at least so long as the purpose of the state legislation is not incompatible with these general goals of the NLRA."). Although Bimbo argues that Peatry's claims interfere with and attempt to regulate an aspect of labor relations, the Court disagrees and finds BIPA comparable to a state statute that establishes a minimum labor standard with which all employers must comply. *See Fort Halifax*, 482 U.S. at

23 (state statute requiring employers to provide severance pay to certain employees not preempted by the NLRA); *Metro. Life Ins. Co.*, 471 U.S. at 755 ("Minimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA."). Nor has Bimbo sufficiently explained how BIPA's requirements are incompatible with the NLRA's concerns "with establishing an equitable process for determining terms and conditions of employment." *See Metro. Life Ins. Co.*, 471 U.S. at 753, 758 (state insurance regulation "designed to implement the Commonwealth's policy on mental-health care" did not "limit the rights of self-organization or collective bargaining protected by the NLRA"). Therefore, the Court cannot find that the NLRA preempts Peatry's pre-May 8, 2018 claims so as to require their dismissal.

## III.    Sufficiency of the Pleadings

Alternatively, Bimbo argues that Peatry has failed to state a BIPA claim because she has not adequately pleaded negligence, recklessness, or intent. BIPA provides that a plaintiff may recover statutory damages of $1,000 for negligent violations and $5,000 for intentional or reckless violations. 740 Ill. Comp. Stat. 14/20(1)–(2). But the need to demonstrate negligence, intentional action, or recklessness impacts a plaintiff's recovery, not the underlying substantive violation of BIPA. *See Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶¶ 33, 36 ("[W]hen a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach. . . . The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action."); *Woodard v. Dylan's Candybar LLC*, Doc. 46 at 9 (Ill. Cir. Ct. Cook Cty. Nov. 20, 2019) (BIPA's inclusion

of states of mind serve as "standards of culpability for determining damages," not as elements of the violation).

Rule 8 does not require a plaintiff to plead damages with particularity and instead only requires "a demand for the relief sought." Fed. R. Civ. P. 8(a)(3). Peatry has sufficiently complied with this requirement. And even treating state of mind as an element of the violation, by alleging that Bimbo has made no effort to comply with BIPA, Peatry has pleaded facts to suggest Bimbo acted with negligence, recklessness, or intent. *See Neals v. PAR Tech. Corp.*, --- F. Supp. 3d ----, 2019 WL 6907995, at *3 (N.D. Ill. Dec. 18, 2019) (rejecting the defendant's argument that the plaintiff failed to include facts that would entitle her to statutory damages because the rules do not require a plaintiff to prove her case at the pleading stage); *Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2019 WL 5635180, at *5 (N.D. Ill. Oct. 31, 2019) ("[T]he BIPA took effect more than ten years ago, and if the allegations of his complaint are true—as the Court must assume at this stage—BNSF has made no effort to comply with its requirements. This is certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible."). *But see Namuwonge v. Kronos, Inc.*, No. 1:19-cv-03239, 2019 WL 6253807, at *5 (N.D. Ill. Nov. 22, 2019) ("Namuwonge's abstract statements regarding damages are insufficient for the Court to infer that Kronos acted recklessly or intentionally."); *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 618 (N.D. Ill. 2019) ("Rogers' conclusory statement of CSX's intent is insufficient to allow us to infer that CSX acted intentionally or recklessly and does nothing to distinguish this case from every possible BIPA case where the defendant is alleged to have failed to meet the strictures of Section 15.").

## IV.    IWCA Preemption

Finally, Bimbo advances another preemption argument, contending that the IWCA preempts Peatry's BIPA claims.  The IWCA provides the exclusive remedy for accidental injuries that employees sustain in the course of their employment.  820 Ill. Comp. Stat. 305/5(a); *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (1990).  A plaintiff can avoid IWCA preemption if she establishes "(1) that the injury was not accidental; (2) that the injury did not arise from . . . her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the [IWCA]."  *Meerbrey*, 139 Ill. 2d at 463.  Peatry argues that she has not asserted a compensable injury.

"[W]hether an injury is compensable is related to whether the type of injury categorically fits within the purview of the Act."  *Folta v. Ferro Eng'g*, 2015 IL 118070, ¶ 23.  Peatry claims that the IWCA only preempts claims for physical injuries or psychological injuries arising out of physical injuries or stemming from a definite time and place, while Bimbo maintains that Peatry's injury should be considered a psychological one compensable under the IWCA.  In *Treadwell v. Power Solutions International, Inc.*, a court in this district extensively addressed the question presented here.  --- F. Supp. 3d ----, 2019 WL 6838940, at *5–6 (N.D. Ill. Dec. 16, 2019).  After reviewing the case law and noting that any other conclusion would be "a novel development," the court found that the IWCA does not preempt non-physical and non-psychological injuries like those arising under BIPA.  *Id.*  A number of Illinois trial courts have found similarly, concluding that the "loss of the ability to maintain privacy rights . . . is neither a psychological nor physical injury and is not compensable under the Act."  *McDonald v. Symphony Bronzeville Park LLC*, Doc. 34-5 at 4 (Ill. Cir. Ct. Cook Cty. June 17, 2019); *see also Woodard*, Doc. 46 at 9–11; *Robertson v. Hostmark Hosp.*, Doc. 34-1 at 4 (Ill. Cir. Ct. Cook Cty.

July 31, 2019); *Fluker v. Glanbia Performance Nutrition, Inc.*, Doc. 34-4 at 4 (Ill. Cir. Ct. Cook Cty. July 11, 2019). The Court adopts the reasoning from *Treadwell* and agrees that, under the current case law, the IWCA does not cover the injury Peatry alleges—the invasion of her privacy rights. *See Treadwell*, 2019 WL 6838940, at *5–6. At this stage, the Court allows Peatry's pre-May 8, 2018 claims to proceed to discovery.

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Bimbo's motion to dismiss [17]. The Court dismisses Peatry's post-May 8, 2018 claims without prejudice.


Dated: February 26, 2020

SARA L. ELLIS
United States District Judge