# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LISA PEATRY, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Case No. 1:19-cv-02942 |
| v. ) ) | Hon. Sara L. Ellis |
| BIMBO BAKERIES USA, INC., ) ) | Magistrate Judge M. David Weisman |
| Defendant. ) ) | |

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Ryan F. Stephan
Catherine T. Mitchell
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 ƒ
rstephan@stephanzouras.com
cmitchell@stephanzouras.com

**COUNSEL FOR PLAINTIFF AND THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... iii

I.    INTRODUCTION ............................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

III.    SUMMARY OF SETTLEMENT TERMS .................................................................. 3

    A.    The Settlement Class. ............................................................................................. 3

    B.    The Settlement Fund. ............................................................................................. 3

    C.    Payment of Attorneys' Fees, Costs, and Incentive Award. ..................................... 4

    D.    Release of Liability. ............................................................................................... 4

    E.    Settlement Administration. ..................................................................................... 5

    F.    Objections and Opt-Outs ........................................................................................ 5

IV.    THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23 ................................................................................................................................... 5

V.    THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFF'S CLAIMS. .................................................... 6

    A.    The Settlement Is Fair, Reasonable, and Adequate. ............................................... 7

CONCLUSION ........................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases** **Pages**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ................................................................................................................. 6, 7

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) ............................... 12

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir. 1996)............................. 13

*Donovan v. Estate of Fitzsimmons*, 778 F.2d 298 (7th Cir. 1985)................................................ 11

*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ................................... 7, 8, 10

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014).................................................................... 7

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).......................................................................... 6

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) .................................................................... 12

*Goldsmith v. Tech Sols. Co.*, No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ...... 10

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). .................... 10

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)....................................................................... 6, 7, 8, 12

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677 (7th Cir. 1987).............. 10

*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004).................................................. 7

*Patterson v. Stovall*, 528 F.2d 108 (7th Cir. 1976) ........................................................................ 6

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014).................................................................. 12

*Pichlet v. UNITE,* 775 F. Supp. 2d 754 (E.D. Pa. 2011) .............................................................. 11

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ................................................ 11

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)...................................... 8, 9, 12

*Seiden v. Nicholson*, 72 F.R.D. 201 (N.D. Ill. 1976) ................................................................... 11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006).......................... 7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .......................................... 6

*Williams v. Quinn*, 748 F. Supp. 2d 892 (N.D. Ill. 2010) ................................................................. 8

**Statutes**

720 ILCS 14/1 ................................................................................................................................. 1

740 ILCS 14/1 ................................................................................................................................. 4

**Rules**

Fed. R. Civ. P. 23 (c)(2)(B) ............................................................................................................ 6

Fed. R. Civ. P. 23(e) ....................................................................................................................... 6

**Other Authorities**

Herbert B. Newberg & Alba Conte, *Newberg of Class Actions ("Newberg")*, §11.41 at 11-88
   (4th ed. 2002) ............................................................................................................................ 13

I.  **INTRODUCTION**

Plaintiff and Class Representative Lisa Peatry ("Named Plaintiff"), individually and on behalf of a class of individuals certified for settlement purposes ("Plaintiffs"), move for final approval of the Parties' Settlement of claims alleging that Defendant Bimbo Bakeries USA, Inc. ("BBUSA" or "Defendant") violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* by: (1) failing to inform employees in writing that they would be capturing, collecting, storing, using, and disseminating biometric data (*i.e.*, statutorily-defined biometric identifiers and/or information) prior to doing so; (2) failing to obtain a written release for the capture of biometric data prior to such capture; (3) failing to inform such persons in writing of the specific purpose and length of time for which biometric data is captured; and (4) failing to develop and adhere to a publicly available retention schedule and guidelines for permanently destroying biometric data.

The Parties' Settlement of this action is fair, reasonable, and adequate under the governing legal standards and satisfies all of the criteria for final approval. The Parties respectfully request the Court: (1) grant Final Approval of the proposed Settlement Agreement, attached as Exhibit 1, including the release of claims as set forth in therein, and, (2) enter the Proposed Final Approval Order, attached hereto as Exhibit 2.[1]

On September 28, 2021, the Court preliminarily approved the Parties' $295,000.00 non-reversionary Settlement. (Dkt. 96). Since that time, the Settlement Class Members have been notified of the terms of the Settlement, including the monetary relief, the allocation of settlement payments, and their right to object or opt-out of the Settlement. Zero individuals from the Settlement Class objected to the Settlement, and only one individual excluded themselves. With

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Settlement Agreement.

1

such overwhelming support for the Settlement, and for the reasons set forth below, the Court should grant final approval of the Parties' Settlement Agreement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As set forth in greater detail in Plaintiff's Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement (Dkt. 93), Named Plaintiff, Lisa Peatry filed the above-captioned class action in the Circuit Court of Cook County on March 26, 2019, alleging that Defendant violated BIPA when it required workers to scan their fingerprints on biometric timekeeping devices at its Cicero, Illinois facility without first: (1) informing individuals in writing that they will be capturing, collecting, storing, using, and disseminating biometric data prior to doing so; (2) obtaining a written release for the capture of biometric data prior to such capture; (3) informing individuals in writing of the specific purpose and length of time for which biometric data is captured; and (4) developing and adhering to a publicly available retention schedule and guidelines for permanently destroying biometric data.

After removing the matter to federal court on May 1, 2019 (Dkt. 1), the Parties briefed Defendant's motion to dismiss, which was granted in part and denied in part (Dkt. 48), and soon thereafter proceeded to exchange substantive written discovery and engaged in numerous depositions of Defendant's witnesses and the Named Plaintiff. After fact discovery closed on June 14, 2021 (Dkt. 78), the Parties participated in a settlement conference with Magistrate Judge Weisman on July 27, 2021. Prior to the settlement conference, the Parties exchanged information regarding class size, engaged in some arms-length settlement negotiations, and at the settlement conference, with Judge Weisman's assistance, the Parties continued to negotiate a settlement of Plaintiff's and Class Members' BIPA claims, as well as a settlement of Class Counsel's attorneys' fees and reasonable out-of-pocket costs. Following the settlement conference, both Parties

accepted Magistrate Judge Weisman's settlement recommendation, and continued extensive arms-length negotiations which culminated in the Settlement Agreement for which the Parties now seek final approval.

On September 20, 2021, Plaintiff filed the Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement. (Dkt. 93). On September 28, 2021, the Court granted Preliminary Approval of the Settlement. (Dkt. 96).

### III. SUMMARY OF SETTLEMENT TERMS

#### A. The Settlement Class.

The proposed "Settlement Class" includes all individuals employed by BBUSA who allegedly had their finger scan data and/or any other biometric identifier and/or information collected, captured, received, stored or otherwise obtained, retained, disseminated, or disclosed by Defendant while working at its Cicero, Illinois facility at any time between February 9, 2018 and May 8, 2018. (Exhibit 1, ¶ 3.3).

#### B. The Settlement Fund.

The proposed Settlement will establish a $295,000.00 Settlement Fund. (Exhibit 1, ¶¶ 2.29, 4.1(a)). The Settlement Fund shall be divided among 230 Settlement Class Members who have not opted-out, such that each Settlement Class Member is anticipated to receive approximately $750.00. (*Id*. ¶ 4.2, 7.3). The Settlement Fund will also be used to pay Court-approved amounts for Class Counsel's attorneys' fees and out-of-pocket costs, a Service Award to the Class Representative and Administrative Expenses. (*Id*. ¶ 4.1(a)). Checks to the Settlement Class Members shall remain valid and negotiable for 120 days from the date of their issuance, and thereafter shall become void if not cashed within that time. (*Id*. ¶¶ 7.3(d)). Within 90 days of issuance of settlement checks, the Settlement Administrator shall provide a list of any settlement

3

checks that are not cashed/negotiated within 75 days of issuance to Counsel for the Parties. (*Id*.) Additionally, at the conclusion of the 120-day period, the Settlement Administrator shall provide a list of any settlement checks that are not then cashed/negotiated to Counsel for the Parties. (*Id*.) Within 14 days of the expiration of the 120-day period, the Settlement Administrator shall transfer such uncashed funds to Feeding America as a *cy pres*. (*Id*.)

### C. Payment of Attorneys' Fees, Costs, and Incentive Award.

Contemporaneous with this Motion, Plaintiff will apply for Court approval and distribution of a Service Award to the Named Plaintiff, paid out of the Settlement Fund, of $7,500.00. (*Id.* ¶¶ 4.1(a), 13.5). In addition, Class Counsel will petition the Court for approval of an award of attorneys' fees in the amount of $104,400.00, which represents approximately 35% of the Settlement Fund, plus an additional amount for expenses not to exceed $2,100.00, to be paid out of the Settlement Fund. (*Id.* ¶¶ 4.1(a), 13.2, 13.3). Class Counsel states that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved. These amounts were also negotiated separately from Plaintiffs' BIPA claims, and with the assistance and recommendation of Judge Weisman.

### D. Release of Liability.

In exchange for the relief described herein, Settlement Class Members who have not excluded themselves will provide Defendant and the Released Parties a full release of all claims that relate to or arise out of the allegations in the Complaint and which relate in any way to information that is or could be protected under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.*, or any other similar state, local, or federal law, regulation, or ordinance, or common law. (Exhibit 1, § 5).

### E. Settlement Administration.

The Parties retained Analytics Consulting, an experienced class action claims administrator, to administer the Settlement. (Exhibit 1, ¶ 2.27; *see also* Exhibit 3, Declaration of Jodi Belmont Berbrich ("Berbrich Decl.") ¶ 2). The Settlement Administrator's Administration Expenses will be paid from the Settlement Fund. (Exhibit 1, ¶ 4.1(a); Berbrich Decl. ¶ 10). On October 11, 2021, Class Notices were mailed to 231 persons in the Settlement Class contained in the Class List via First Class mail. (Berbrich Decl. ¶ 6). The Class Notice advised the Settlement Class that they could submit an exclusion and/or objection postmarked by November 25, 2021. (*Id*.) There were 17 Notice packets returned as undeliverable, 2 of which were returned with an address update from USPS and promptly re-mailed. (*Id*. at ¶ 7). Analytics then performed 15 address traces on the other Notice packets returned as undeliverable, which utilizes the individual's name and previous address for locating a current address. (*Id*.) After the trace was performed, 11 addresses were obtained and Notice was promptly re-mailed to these persons via First Class mail. (*Id*.) For the 4 undeliverable Notice packets for which mailing addresses were not obtained after tracing, Defendant attempted to locate e-mail addresses, but none were located. Therefore, as of the date of this declaration, only 4 Class Members of the 231 total remain unreachable. (*Id*.)

### F. Objections and Opt-Outs

The deadline to opt out or object to the settlement was November 26, 2021. (Berbrich Decl. ¶¶ 8-9). This deadline has now passed. Only one Class Member requested exclusion from the settlement, and zero Class Members objected to the settlement. (*Id*.)

## IV. THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23

Under Rule 23(c)(2)(B), notice must provide:

the best notice that is practicable under the circumstances, including individual

5

> notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23 (c)(2)(B).

As set forth above and demonstrated by the thoroughness of the Notice, the Parties' effort to effectuate notice by mail to the Class Members meets the requirements of Rule 23(c)(2)(B). (*See* Berbrich Decl. at Exhibit A, Mailed Notice).

V. **THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFF'S CLAIMS.**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). "In reviewing a proposed settlement, the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts examine the fairness, reasonableness and adequacy of a settlement in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the

6

settlement of class action litigation."). As set forth in detail below, the proposed settlement is fair, reasonable and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of BIPA and, thus, should be approved.

### A. The Settlement Is Fair, Reasonable, and Adequate.

To approve a proposed settlement of a class action under Rule 23, a court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). The Court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider five factors: (1) the strength of plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199.

7

1. **The Settlement Amount Is Substantial Given the Strengths of Plaintiff's Claims and Attendant Risks (First Factor).**

The Settlement is substantial considering Defendant's agreement to settle this case for $295,000.00 for a class of 231 employees. (Exhibit 1, ¶¶ 2.29, 4.1(a)). All Settlement Class Members who have not opted-out—that is, 230 individuals—will be guaranteed an equal share of the gross settlement fund in the amount of approximately $750.00, even after Court-approved reductions for Class Counsel's Fee Award, a Service Award to the Class Representative and Administrative Expenses.

In evaluating the strength of a plaintiff's case on the merits balanced against the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety"). Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the Plaintiff." *Isby*, 75 F.3d at 1200. Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this litigation is far from certain. If the Parties were to proceed with litigation, Plaintiff would be required to prevail on a class certification motion, which would be highly contested and for which success is certainly not guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent

8

risk, complexity, time and cost associated with continued litigation") (internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*. Approval would allow Plaintiff and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. *Id*. at 582. And on liability, while Plaintiff believes she would likely prevail on all of her BIPA claims, Plaintiff would have to overcome Defendant's many defenses, including but not limited to whether Plaintiff has asserted an intentional or reckless BIPA violation sufficient to confer statutory damages, or whether Plaintiff's or Class Members' claims are barred by the statute of limitations. Similarly, while Defendant denies all wrongdoing or liability of any kind whatsoever asserted by Plaintiff or Settlement Class Members in this litigation and believes it would ultimately prevail, Defendant recognizes the inherit risks in continuing litigation. The proposed Settlement ensures that Class Members will receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law.

It is an unavoidable fact that BIPA cases are largely cases of first impression, and the risks and delays that would necessarily accompany briefing the arguments in both the trial and appellate courts were considered here. This Settlement—providing excellent monetary relief without delay—is highly beneficial for the Settlement Class. When considered in light of the potential hurdles faced in obtaining recovery through continued litigation, and the delay that would entail, the relief is well deserving of this Court's final approval. And the Settlement provides far more than "a fraction of the potential recovery." Though not providing a maximum value that conceivably might be awarded at trial at a later date, the Settlement provides substantial guaranteed monetary benefits now. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d

677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

Within fourteen days of the Effective Date, the Settlement Administrator will send each Class Member a Settlement Payment in the form of a check by mail. (Exhibit 1, ¶ 7.3(a)). All Settlement Payments will state on the face of the check that it will expire and become null and void unless cashed within 120 calendar days after the date of issuance. (*Id*. at ¶ 7.3(d)). Any funds from uncashed checks will be distributed to the *cy pres* of Feeding America, if approved by the Court. (*Id*. ¶ 4.1(d)). The Settlement thus ensures that the Settlement Class Members will receive significant monetary relief now. In light of the substantial recovery this settlement provides and the attendant risks of litigation, this factor weighs in favor of final approval.

### 2. Litigation Through Trial and Appeals Would Be Complex, Costly, and Long (Second Factor).

The second factor to be considered is the complexity, length, and expense of litigation that will be avoided by the proposed settlement, which also weighs in favor of final approval. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000). "As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). Here, the Settlement allows Settlement Class Members to receive immediate relief, avoiding lengthy and costly additional litigation.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that

accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). What lies ahead would be years of litigation at every phase of this case. Although Class Counsel believes Plaintiff's case is strong, it is subject to considerable risks and costs if the case is not settled, as demonstrated above.

Assuming that a class would ultimately have been certified here and that Plaintiff would have defeated a summary judgment motion, the case would have proceeded to trial, where the Parties would likely litigate numerous complex issues that—in light of BIPA's relative infancy—are either still being resolved by the appellate courts or are matters of first impression. *See, e.g., Pichlet v. UNITE,* 775 F. Supp. 2d 754, 759 (E.D. Pa. 2011) (approving class action settlement in light of the complexity of future litigation on issues of first impression). Again, although Plaintiff believes in the strength of her claims—a risk that Defendant appreciated in light of the Settlement it agreed to—further litigation poses risks on both sides.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The proposed settlement provides immediate benefits.

If litigation were to continue, extensive class discovery would be required to establish liability and damages. Here, further litigation would certainly result in additional depositions, a fully briefed motion for Rule 23 class certification, potential decertification proceedings, and summary judgment practice on liability, and would prolong the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further

extending the litigation. These costs of further litigation are considerable in terms of both time and money, but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. On the other hand, "[s]ettlement allows the class to avoid inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. This factor therefore weighs in favor of final approval.

### 3. The Reaction of the Class Has Been Positive (Third Factor).

The Settlement Class's reaction to the Settlement has been overwhelmingly positive and weighs strongly in favor of final approval. Zero Class Members objected to the Settlement, and only one Class Member opted-out. This is significant in determining whether the proposed settlement is reasonable to the class as a whole. As demonstrated above, the Settlement Administrator has thoroughly implemented the notice plan, and the Objection/Exclusion deadlines have passed. (*See generally* Berbrich Decl.). The lack of any significant opposition and only one exclusion request demonstrates overwhelming support for the Settlement. Accordingly, this factor also favors final approval of the settlement.

### 4. Competent Counsel for All Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980)); *see also Isby*, 75 F.3d at 1200. However, they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Importantly, there was absolutely no collusion here. *See Isby*, 75 F.3d at 1200. The Parties entered into arms-length settlement negotiations prior to the settlement conference, and those negotiations continued with the assistance and oversight of Judge Weisman. In short, it took the Parties considerable effort to

reach the detailed terms of this Settlement now before the Court. (Exhibit 4, Declaration of Catherine T. Mitchell ("Mitchell Decl."), at ¶¶ 8-9).

"There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Herbert B. Newberg & Alba Conte, *Newberg of Class Actions ("Newberg")*, §11.41 at 11-88 (4th ed. 2002); *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Class Counsel are competent and experienced in class actions and are familiar with the strengths and weaknesses of the claims and defenses. (Mitchell Decl. ¶¶ 5-6, 15). Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement. (*Id*. at. ¶ 15). Simply put, Class Counsel believe that the Settlement is certainly in the best interest of the Settlement Class. (*Id*. at ¶¶ 15-16). First, the monetary relief provided is consistent with relief in many similar class settlements and similar BIPA settlements. And, a recovery for the Settlement Class now is preferable to years of litigation and inevitable appeals with no guarantee of recovery. This factor therefore weighs in favor of final approval.

### 5. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).

This complex class action was resolved more than two years after it was initiated. involved research, analysis, investigation, motion to dismiss briefing, substantive discovery practice, a full-day settlement conference, and extensive settlement negotiations. (Mitchell Decl. ¶¶ 8-9). The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the settlement. (*Id*. at ¶ 15). Given the significant amount of time and resources spent by

13

the Parties exchanging information and advancing settlement negotiations, this fifth, and final, factor favors final approval of the settlement.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Unopposed Motion and Memorandum in Support of Final Approval of Class Action Settlement, and enter the Proposed Final Approval Order, attached as Exhibit 2.

Date: December 30, 2021

Respectfully Submitted,

*/s/ Catherine T. Mitchell*

Ryan F. Stephan
Catherine T. Mitchell
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
cmitchell@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF AND THE SETTLEMENT CLASS MEMBERS**

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on December 30, 2021, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

*/s/ Catherine T. Mitchell*